IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMAAL KENNETH ABEOKUTO #323-969 *
        Plaintiff,
v.                                           *   CIVIL ACTION NO. RDB-11-3097

J. PHILIP MORGAN, et al.             *
        Defendants

**MEMORANDUM**

**Background**

On October 31, 2011, Jamaal Abeokuto requested emergency and permanent injunctive relief, alleging that corrections personnel at Western Correctional Institution[1] ("WCI") intended to remove him from protective custody despite knowledge that the nature of his conviction places him in danger of assault.[2]  ECF No. 1.  As this allegation raised a serious question about Abeokuto's safety and well-being, the Office of the Maryland Attorney General was ordered to respond within twenty-one days to his claim. ECF No. 4.

On November 7, 2011, Abeokuto's removal from protective custody was approved by WCI's assistant warden.  ECF No. 6, Attachment 1 at 9.  On November 22, 2011, counsel filed the court-ordered response (ECF No. 6), which has been construed as a motion for summary judgment opposed by Abeokuto.[3]  ECF Nos. 9 and 10.  No hearing is necessary.  *See* Local Rule

---

[1] Abeokuto named Warden J. Philip Morgan and Director of Classification Jim Tichnell as parties to his action.

[2] The pending Motion for Leave to Proceed In Forma Pauperis (ECF No. 2) is granted.  While assessment of an initial partial filing fee is waived, Abeokuto nonetheless must make monthly payments on the remainder of the $350.00 filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(2);

[3] Abeokuto requests appointment of counsel.  ECF No. 3.  A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1)[3] is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances.  *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also, Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982).  The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant.  *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). Where a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed.  *Id.*  The Court has examined Abeokuto's motions and finds that he has demonstrated the wherewithal to either articulate the legal and

105.6 (D. Md. 2011).  For the reasons stated below, the Motion filed on behalf of the Warden and Director of Classification will be granted and emergency and permanent injunctive relief denied.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to. . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal

---

factual basis of his claims himself or secure meaningful assistance in doing so.  The issue before the Court is not unduly complicated.  Therefore, there are no exceptional circumstances at this time that would warrant the appointment of an attorney to represent Abeokuto under § 1915(e)(1).


quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Abeokuto seeks a preliminary injunction as well as permanent injunctive relief mandating he remain on Special Confinement Housing and assigned to protective custody. A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, he must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc*., __ U.S. __, 129 S.Ct. 365, 374 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, _U.S. _, 130 S.Ct. 2371, 176 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Abeokuto must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987).

> "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society."

*Farmer v. Brennan*, 511 U.S. 825, 833– 34 (1994) (citations omitted). Prison personnel are not liable under the Eighth Amendment for denying a prisoner humane conditions of confinement unless they know of and disregard an excessive risk to inmate health or safety. Prison personnel must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and they must also draw the inference. *Farmer, id.* at 837; *see also Rich v.*

*Bruce*, 129 F. 3d 336, 339– 40 (4th Cir. 1997).  "[T]o survive summary judgment, [Abeokuto] must come forward with evidence from which it can be inferred that the defendants…knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future." *Farmer*, 511 U.S. at 846.

**Analysis**

Abeokuto challenges WCI case management's decision to remove him from protective custody status based on the notoriety of his crime.  He argues that because he was convicted of the murder of an eight-year-old girl and his case received publicity in the Baltimore area, he will be in danger of serious harm at the hands of other prisoners if he is housed in general population. He also believes that because the little girl he murdered was related to a correctional officer at a Baltimore City facility, he may be in danger from correctional staff.

Abeokuto has been incarcerated since December 24, 2002, and is currently serving life without parole. ECF No. 6, Exhibit A, Declaration of James 1 E. Tichnell, ¶ 4.  His base file lists no documented enemies, no documented assault on his person, and no documented threat against him. *Id.*  His claim to be in danger from other inmates (ECF No. 9 at 3-6) has been investigated by WCI's Intelligence Office and no evidence has been found to show that his safety is compromised in any way.[4] *Id.* His claim that he may be retaliated against by correctional staff is

---

[4] Abeokuto's claim that he "didn't [know he] need[ed] a[n] enemy list" of those who threatened him while he was on protective custody and thus is unable to provide names to corrections staff (ECF No. 9 at 32) is specious at best. His November 14, 2011 letter to his case manager – written after he was removed from protective custody – names several individuals who allegedly threatened him and/or conspired to cause him harm both while he was housed elsewhere and while housed at WCI on protective custody and in general population  *Id.* at 33-36.  His November 30, 2011 letter to Sgt. Miller indicates that shift worker "Ali" told him that he "would be going back onto . . . .[protective custody]" does not constitute a threat.  *Id.* at 40.  His November 4, 2010 Administrative Remedy Procedure ("ARP") referenced "dirty looks" he received when his name was called out so that he could be transported for a court appearance.  *Id.* at 41.   His September 18, 2011 and  November 1, 2011 ARPs referenced

merely an unsupported assertion. *Id.,* ¶ 5.  While the attorney who represented Abeokuto at trial has contacted WCI to reiterate the claims that Abeokuto is in danger from fellow prisoners and/or corrections staff, the attorney has been unable to provide objective evidence to substantiate the claims.  ECF No. 6, Exhibit 1, attachment at 6-8 and 10-11.  Abeokuto has chosen to refuse general population, instead opting to incur an infraction and be house on disciplinary or administrative segregation.  ECF No. 5.  This decision, however, does not inform the outcome of this case.

Maryland's Division of Correction ("DOC") uses Special Confinement Housing ("SCH") when a prisoner requires close supervision, segregation from general population prisoners, or both. SCH is provided for the purposes of administrative segregation, disciplinary segregation, and protective custody. In most instances where protective custody housing is provided, two prisoners typically are housed in a cell. Protective custody is appropriate only when required for the protection of the prisoners, and "every effort shall be made by case management staff . . . to find suitable alternatives to protective custody housing." ECF No. 6, Affidavit, ¶¶ 4 and 6 and pp. 13, 18-20 of attached document "DOC Manual 100-.0002 Section 18 – Special Confinement Housing.

Abeokuto simply does not meet the criteria for continued assignment to protective custody status.  Neither a preliminary nor permanent injunction is warranted.  By separate Order summary judgment shall be granted to the correctional Defendants and the case closed.

|  |  |
|---|---|
| March 8, 2012 | _____/s/_____<br>RICHARD D. BENNETT<br>UNITED STATES DISTRICT JUDGE |

---

"harassment" from general population prisoners during transportation to Bon Secor Hospital. *Id.* at 43-46.  Despite these references, the fact remains that Abeokuto has never been subject to actual harm by any of his perceived "enemies."